UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RAYMOND A. DUBOIS, JR.,                )
                                       )
            Plaintiff             )
                                       )
v.                                     )    No. 1:17-cv-00076-JDL
                                       )
NANCY A. BERRYHILL,                    )
Acting Commissioner of Social Security,)
                                       )
            Defendant             )

**REPORT AND RECOMMENDED DECISION**[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred at Step 3 in failing to call a medical expert to determine whether his migraine headaches equaled the criteria of Listing 11.03, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), or to make factual determinations relevant to that issue, and, at Step 4, in reaching physical and mental residual functional capacity ("RFC") determinations that lack a proper medical foundation. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 14) at 4-16. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, Finding 1, Record at 113; that he had severe impairments of chronic headaches with migraine features, affective disorder, anxiety disorder, obstructive sleep apnea, and somatic dysfunction of the spine, Finding 3, *id.*; that he had no impairment or combination of impairments that met or medically equaled in severity the criteria of a listed impairment, Finding 4, *id.* at 114; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he could lift and carry no more than 20 pounds occasionally and 10 pounds frequently, never climb ladders, scaffolding, or ropes, never work around dangerous equipment or unprotected heights, never operate a commercial vehicle, could not be in a loud or very loud hearing environment, needed to avoid work in direct sunlight or with strobe lights, and could have no contact with the public, Finding 5, *id.* at 116; that, considering his age (41 years old, defined as a younger individual, on his alleged disability onset date), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 122-23; and that he, therefore, had not been disabled from his alleged onset date of disability, June 1, 2009, through the date of the decision, January 14, 2016, Finding 11, *id.* at 123-24. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of*

*Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process. At Step 3, the claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Asserted Errors in Evaluating Listing 11.03

#### 1. Failure To Call Medical Expert

The plaintiff first complains that the ALJ erred in failing to obtain the opinion of a medical expert as to whether his migraine headaches equaled the criteria of Listing 11.03 (minor motor seizures). *See* Statement of Errors at 4-8. He acknowledges that he bore the burden of proving

3

that his condition equaled a listing but asserts that it was impossible to do so unless the ALJ called a medical expert, given that the agency prohibits reliance on outside medical experts to find that the criteria of a listing are equaled. *See id.* at 5 (citing 20 C.F.R. § 404.1526; Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX) §§ I-2-5-32 and I-2-5-34). He argues that, pursuant to HALLEX § I-2-5-34, "[a]n ALJ **must** obtain a ME [medical expert] opinion when an ALJ considers whether a claimant's impairment(s) medically equal a [l]isting." *Id.* (emphasis in original) (footnote omitted).

The commissioner argues that this is a misreading of the authorities on which the plaintiff relies, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 20) at 2-8, and I agree.

Both 20 C.F.R. § 404.1526, which pertains to SSD cases, and § 416.926, which pertains to SSI cases, state that, in assessing medical equivalence, the commissioner will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. §§ 404.1526(c), 416.926(c). In turn, "[a] medical or psychological consultant designated by the Commissioner includes any medical or psychological consultant employed or engaged to make medical judgments by the Social Security Administration, the Railroad Retirement Board, or a State agency authorized to make disability determinations." *Id.* §§ 404.1526(d), 416.926(d).

The ALJ did so, taking into account the opinions of medical consultants engaged by a state agency to make disability determinations, namely, J.H. Hall, M.D., and Donald Trumbull, M.D. *See* Record at 121, 184-86, 210-12. Both Dr. Hall, in an opinion dated August 9, 2013, and Dr. Trumbull, in an opinion dated April 3, 2014, expressly considered Listing 11.03 but continued the

4

sequential evaluation process, impliedly finding that the criteria of the listing were neither met nor equaled. *See id*. at 184-85, 210-11. They explained, in relevant part:

> Although migraine is [the] closest listed impairment, it is not clear that [the plaintiff's] headaches are, in fact, migraines. Chronic daily headaches related to excess caffeine or caffeine withdrawal ha[ve] been suggested as has been somatic dysfunction as a cause.

*Id*. at 185, 211. The ALJ gave "great weight" to the Hall and Trumbull opinions. *Id*. at 121.

HALLEX §§ I-2-5-32 and I-2-5-34 pertain to the circumstances in which, at the hearing level, an ALJ may or must call upon a medical expert, or ME. *See* HALLEX §§ I-2-5-32, I-2-5-34. Section I-2-5-32 provides, in relevant part:

> MEs provide opinions by either testifying at a hearing or responding to written interrogatories. An [ALJ] may use an ME before, during, or after a hearing. The need for ME opinion evidence is generally left to the ALJ's discretion, except in the circumstances outlined in [HALLEX §] I-2-5-34 B.

*Id*. § I-2-5-32(A). Section I-2-5-34 provides, in relevant part:

> The ALJ must obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories[,] in the following circumstances:
>
> ***
>
> - The ALJ is considering finding that the claimant's impairment(s) medically equals a listing.

*Id*. § I-2-5-34(A)(1).

As the commissioner argues, *see* Opposition at 4, 7, this provision is most reasonably read to mean what it says: that an ALJ must consult with a medical expert only when considering finding that a claimant's impairments medically equal a listing, not when he or she is considering finding that they do not. If, as the plaintiff argues, this provision required that an ALJ call upon a medical expert to determine *whether or not* a claimant's impairments equaled a listing, an ALJ would be obliged, as a practical matter, to call upon a medical expert at hearing in every case

5

involving at least one severe impairment, despite having the benefit of opinions rendered by agency nonexamining consultants regarding the Listings on initial review and reconsideration.

The plaintiff's bid for remand on this basis, accordingly, fails as a matter of law.

### 2. Failure To Make Factual Determinations

The plaintiff next seeks remand on the basis that, in assessing whether his migraine headaches equaled Listing 11.03, the ALJ failed to resolve the essential factual questions of whether his headaches significantly interfered with daily activities and how often they occurred. *See* Statement of Errors at 6-7. As the commissioner argues, *see* Opposition at 6-7, the ALJ was not required to make such findings, having relied on the opinions of Drs. Hall and Trumbull that no listing, including Listing 11.03, was met or equaled, *see* Record at 121, 184-86, 210-12. Remand, therefore, is unwarranted on the basis of this point, as well.

### B. Asserted Lack of Foundation for Physical RFC Finding

The plaintiff next challenges the ALJ's physical RFC determination on the basis that, having rejected the RFC opinion of a treating source, nurse practitioner ("NP") Melissa Hackett, FNP, the ALJ relied solely on the opinions of Drs. Hall and Trumbull, who assessed limitations as to only one of the physical impairments the ALJ deemed severe, migraine headaches. *See* Statement of Errors at 8. He asserts that, as a result, the ALJ lacked any medical foundation for assessing limitations attributable to his obstructive sleep apnea or spinal dysfunction, instead exceeding the bounds of her competence as a layperson by impermissibly construing the raw medical evidence. *See id*. (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Burns v. Astrue*, No. 2:11-cv-151-GZS, 2012 WL 313705, at *4 (D. Me. Jan. 30, 2012) (rec. dec., a*ff'd* Feb. 21, 2012)).

In the alternative, he contends that remand is warranted on the basis of several specific asserted errors in the ALJ's formulation of his physical RFC: (i) the lack of any limitations attributable to his obstructive sleep apnea, (ii) the failure to assess nonexertional limitations caused by his migraines, which had been recognized by NP Hackett and should have been apparent as a matter of common sense, and (iii) the addition of environmental restrictions that are unsupported by any medical opinion and reflect an impermissible layperson's judgment that the elimination of certain triggers such as bright lights and loud noises would control the plaintiff's headache symptoms. *See id*. at 9-11.

He finally argues that the ALJ improperly substituted credibility findings for expert opinion in assessing his physical RFC, compounding that error by making several erroneous credibility findings as a result of her impermissible layperson's reliance on the raw medical evidence. *See id*. at 12-14.

The plaintiff's threshold argument overlooks an exception to the general rule that an ALJ, "[a]s a lay person, . . . [is] simply not qualified to interpret raw medical data in functional terms" and must rely instead on "medical opinion[.]" *Nguyen*, 172 F.3d at 35. "[A]n ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Stephens v. Barnhart*, 50 Fed. Appx. 7, 11 (1st Cir. 2002) (citation and internal quotation marks omitted). The plaintiff's failure to address the potential applicability of this exception is fatal to his bid for remand on this point. While he separately argues that the ALJ erred in failing to assess limitations attributable to his sleep apnea, I find no error in that omission for the reasons discussed below.

As the commissioner notes, "a finding that a particular impairment is severe does not necessarily result in a finding of related limitations on the ability to perform work-related

7

functions, particularly where . . . the impairment is one that can be treated with medication[.]" Opposition at 9 (quoting *Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) (citing *Burns*, 2012 WL 313705, at *4)).

As concerned the plaintiff's sleep apnea, the ALJ observed that, although he had reported that "he felt better during the day[,]" with "fewer headaches and more energy[,]" after using his CPAP machine, he was inconsistent in using it. Record at 119 (quoting *id*. at 936). She noted that the plaintiff's insurer stopped covering the cost of the CPAP machine because he did not use it, and treating providers had encouraged him to reapply for it because he "had clear benefit from this previously." *Id*. at 120 (quoting *id*. at 1152).

The plaintiff contends that the ALJ got it wrong, and that he continued to experience insomnia and fatigue affecting his concentration, persistence, and pace even when he used his CPAP machine properly. *See* Statement of Errors at 9-10. At oral argument, his counsel distinguished *Courtney* and *Burns* on the basis that, in those cases, ALJs permissibly assessed no limitations from severe impairments found to have been controlled by treatment. See *Courtney*, 2014 WL 320234, at *4 (claimant had 90 percent improvement using Advil for migraine headaches); *Burns*, 2012 WL 313705, at *4 (once controlled by medications, claimant's attention deficit hyperactivity disorder did not impose significant work-related limitations).

However, the ALJ acknowledged and supportably discredited the plaintiff's allegations that he suffered significant symptoms from his sleep apnea regardless of treatment, pointing to substantial evidence that he had been noncompliant with use of his CPAP machine despite its clear benefit. *See* Record at 117, 119-20. Accordingly, as in *Courtney* and *Burns*, the ALJ did not err in failing to assess limitations from an impairment she deemed severe.

As concerns his migraine headaches, the plaintiff acknowledges that both Drs. Hall and Trumbull took that condition into account; however, he asserts that "[t]hey apparently were not asked, and they did not rate, the severity of the impact of the migraines on such basic non-exertional functions as the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances, or the ability to complete a normal work day and work week without interruptions from the symptoms that result from the Plaintiff's severe migraines." Statement of Errors at 10. He asserts that, "[e]ven without a medical expert, the ALJ should have recognized the non-exertional functions she had to assess that are relevant to this impairment[,]" positing that an individual who must remove himself to a dark quiet space and sometimes to a bathroom because of nausea, dizziness, and vomiting caused by severe headaches cannot sustain reliable and consistent attendance or an acceptable work pace without interruptions. *Id*. at 11.

As the commissioner rejoins, *see* Opposition at 11, however, Drs. Houston and Stahl, the agency's nonexamining psychological consultants, reviewed evidence that included records bearing on the plaintiff's headaches/migraines and assessed no nonexertional limitations from that or any other condition, *see* Record at 181-84, 208-10.

Nor did the ALJ err in assessing migraine-related environmental restrictions above and beyond those found by any medical expert, including Drs. Hall and Trumbull. The commissioner correctly observes that, in assessing those restrictions, the ALJ simply credited the plaintiff's own testimony that sunlight, light, and sometimes noise triggered his headaches. *See* Opposition at 11; Record at 151. That was permissible. *See, e.g., Dandreo v. Astrue*, Civil No. 09-347-P-H, 2010 WL 2076090, at *6 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 9, 2010) (claimant could not be

heard to complain that ALJ's finding of a limitation against repetitive fine manipulation was unsupported by substantial evidence when source of limitation was claimant's own testimony).

The plaintiff finally contends that the ALJ substituted negative credibility findings bearing on his headaches and sleep apnea, some of which were erroneous, for expert opinion in determining his RFC. *See* Statement of Errors at 12-14. "A negative credibility assessment, standing alone, is not a proper basis for an RFC finding." *Dubriel v. Astrue*, Civil No. 08-406-B-W, 2009 WL 1938986, at *3 n.2 (D. Me. July 6, 2009) (rec. dec., *aff'd* July 24, 2009). As the commissioner argues, *see* Opposition at 13-15, however, that was not the case here. The ALJ adopted the RFC opinions of Drs. Hall and Trumbull, who considered and assessed limitations pertaining to the plaintiff's headaches, *see id.* at 121, 184-86, 210-12, made a permissible commonsense judgment that his sleep apnea imposed no limitations, and chose to assess additional migraine-related limitations based on the plaintiff's own testimony.

Remand, accordingly, is unwarranted on the basis of asserted errors in the ALJ's determination of the plaintiff's physical RFC.

### C. Asserted Lack of Foundation for Mental RFC Finding

The plaintiff finally seeks remand on the basis that the ALJ misconstrued the findings of agency examining consultant Jason Merrin, Ph.D., in assessing his mental RFC, as a result of which she did not fully capture his limitations in social functioning and ignored limitations in his ability to persist at tasks. *See* Statement of Errors at 14-16. He contends that, because Drs. Houston and Stahl found no severe mental impairment and, hence, assessed no mental RFC, the ALJ should have consulted a medical expert or referred his case for a new consultative examination to assist in that determination. *See id.*

I find no error. As the commissioner points out, *see* Opposition at 16-17, the ALJ explained that she gave "some weight" to the Stahl opinion, to the extent that she adopted his findings that the plaintiff had only mild restrictions in activities of daily living and concentration, persistence, and pace, which she deemed "consistent with the overall medical record[,]" Record at 121. However, she explained that, in her view, Dr. Stahl's finding of only mild restrictions in social functioning was "not supported by the entirety of the record." *Id*. She elaborated:

> More specifically, the practitioners who were able to personally evaluate the [plaintiff] made note of the fact that his hygiene was poor and that he struggled to maintain his personal appearance. Because I find that this difficulty in maintaining his hygiene equates to a moderate difficulty in social functioning I have given Dr. Stahl's opinion on this matter little weight.

*Id*. at 121-22. In support of that finding, she cited Exhibit 5F, the August 19, 2013, report of Dr. Merrin. *See id*. at 121-22, 733-36.

She gave "great weight" to the Merrin opinion, explaining:

> Dr. Merrin was able to personally evaluate the [plaintiff] and, based upon their time together, formed an opinion that is consistent with the medical record as a whole. He found the [plaintiff] to have normal thought processes, a cooperative attitude, and good insight[,] judgment and impulse control. Dr. Merrin believed that the [plaintiff] was able to follow work rules, behave in an emotionally stable manner and use appropriate gross judgment. Dr. Merrin did note that the [plaintiff] seemed to have "an impaired ability to maintain his personal appearance" and noted that "his social skills seem borderline." These findings have also been taken into account in the RFC above[,] which restricts the [plaintiff] to work not involving the general public.

*Id*. at 121 (quoting *id*. at 735).

The plaintiff complains that the ALJ overlooked Dr. Merrin's finding that, although his attention, concentration, pace, and memory were within normal limits, his persistence was "borderline." Statement of Errors at 14-15; Record at 735.

However, the ALJ's omission of limitations in persistence was supported by a proper medical foundation in the form of the Stahl opinion, reached with the benefit of review of the

11

Merrin report, that the plaintiff had no more than mild restrictions in concentration, persistence, or pace. *See* Record at 121, 207, 210. As the commissioner observes, *see* Opposition at 17, it is not clear whether Dr. Merrin's finding that the plaintiff had "borderline" persistence translates to specific limitations. However, assuming that it does, the ALJ straightforwardly resolved any conflict between the Stahl and Merrin opinions by electing to credit the opinion of Dr. Stahl. *See, e.g.*, *Rodriguez*, 647 F.2d at 222 ("The [commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.").[2] The ALJ was not obliged to credit either the Stahl or the Merrin opinion in its entirety. *See, e.g., Ball v. Soc. Sec. Admin. Comm'r*, No. 2:14-cv-61-JDL, 2015 WL 893008, at *4 (D. Me. Mar. 2, 2015) ("[T]his court has held that an [ALJ] may not only pick and choose among different expert[s'] opinions but also adopt only a portion of an expert's opinion[.]").

With respect to social functioning, the plaintiff recognizes that the ALJ did not construe raw medical evidence to assess his mental RFC but, rather, relied on the expert opinion of Dr. Merrin. *See* Statement of Errors at 14. However, he argues that the ALJ's finding that he was unable to have contact with the public is unsupported by a proper medical foundation because she attributed the need for that restriction to poor hygiene but assessed no similar limitation against proximity to coworkers. *See* Statement of Errors at 15. He reasons that an impaired ability to maintain one's personal appearance creates "obvious potential problems . . . working in the same space with co-workers," and that "[j]obs that require teamwork and/or close proximity could

---

[2] Neither the ALJ nor Dr. Stahl appears to have perceived such a conflict. The ALJ indicated that both the Merrin and Stahl opinions supported her omission of restrictions in concentration, persistence, or pace, and Dr. Stahl indicated that he gave the Merrin report great weight. *See* Record at 121, 211.

12

reasonably be expected to be problematic because of this functional deficit." *Id*. (footnote omitted).

As the commissioner rejoins, *see* Opposition at 17, however, Dr. Merrin noted no need for restrictions against interaction with coworkers (or for that matter, the public) as a result of the plaintiff's hygiene issues, *see* Record at 735, and the plaintiff offers only conjecture that such a limitation was required. Remand, accordingly, is unwarranted on the basis of this point of error.[3]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of December, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] The plaintiff makes two additional arguments in passing. First, he contends that the ALJ failed to address evidence that he engaged in behaviors that negatively impacted his social functioning, including his testimony and a report of his former girlfriend. *See* Statement of Errors at 15 n.9. However, the ALJ was not required to discuss every piece of evidence in the record, *see, e.g., Hatt v. Soc. Sec. Admin. Comm'r*, No. 1:13-cv-00335-NT, 2014 WL 4411600, at *5 (D. Me. Sept. 5, 2014), or to credit the plaintiff's or others' testimony. Second, the plaintiff argues that the ALJ's errors in assessing his mental RFC likely could have been avoided had she not omitted assessment of the so-called "A" criteria of Listings 12.04 and 12.06. *See* Statement of Errors at 16. As the commissioner observes, *see* Opposition at 17 & n.10, this point is sufficiently undeveloped to be waived, *see, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

13